Approved: _Nick B_____
          NICHOLAS S. BRADLEY
          Assistant United States Attorney

Before:   THE HONORABLE JUDITH C. McCARTHY
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - x    19 mag 8845

UNITED STATES OF AMERICA          :    **COMPLAINT**

        - v. -                    :    Violations of
                                       21 U.S.C. §§ 841(a)(1),
                                  :    841(b)(1)(A), and 18
HECTOR HERNANDEZ-ESCOLASTICO,          U.S.C. §§ 924(c) and 2
                                  :
          Defendant.              :
                                       COUNTIES OF OFFENSE:
                                  :    WESTCHESTER, BRONX
- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        JACQUELINE ESTEVEZ, being duly sworn, deposes and says
that she is a Task Force Officer with the Drug Enforcement
Administration, and charges as follows:

COUNT ONE

        1.   On or about September 18, 2019, in the Southern
District of New York and elsewhere, HECTOR HERNANDEZ-
ESCOLASTICO, the defendant, intentionally and knowingly
distributed and possessed with intent to distribute a controlled
substance, in violation of Title 21, United States Code, Section
841(a)(1).

        2.   The controlled substance that HECTOR HERNANDEZ-
ESCOLASTICO, the defendant, distributed and possessed with
intent to distribute was 400 grams and more of a mixture or
substance containing a detectable amount of fentanyl, in
violation of Title 21, United States Code, Section 841(b)(1)(A).

        (Title 21, United States Code, Sections 841(a)(1) and
                    841(b)(1)(A).)

COUNT TWO

        3.   On or about September 18, 2019, in the Southern
District of New York and elsewhere, HECTOR HERNANDEZ-

2

ESCOLASTICO, the defendant, during and in relation to a drug
trafficking crime for which he may be prosecuted in a court of
the United States, namely, the possession with intent to
distribute a controlled substance as charged in Count One of
this Complaint, knowingly did use and carry a firearm, and, in
furtherance of such a crime, did possess a firearm, to wit, a
Glock Model 26 9 millimeter handgun.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

          The bases for my knowledge and for the foregoing
charge are, in part, as follows:

          4.    I am a Task Force Officer with the Drug
Enforcement Administration ("DEA") and a Detective with the
Yonkers Police Department, and I have been personally involved
in the investigation of this matter.  This Affidavit is based
upon my personal participation in the investigation of this
matter, my conversations with law enforcement agents and others,
as well as my examination of reports and records.  From this
investigation, I have learned the following, among other things.
Because this affidavit is being submitted for the limited
purpose of establishing probable cause, it does not include all
the facts that I have learned during the course of my
investigation.  Where the contents of documents and the actions,
statements, and conversations of others are reported herein,
they are reported in substance and in part, except where
otherwise indicated.

          5.    Based on my involvement in this investigation, as
well as my conversations with other law enforcement agents and
individuals, I have learned that the DEA has been investigating
drug trafficking in the vicinity of Yonkers, New York.  As part
of this investigation, on or about September 13, 2019, the DEA
arrested an individual in Yonkers after observing that
individual sell approximately 440 grams of fentanyl to a
confidential informant as part of a controlled purchase.

          6.    Subsequent to his arrest on or about September
13, 2019, that individual (hereafter, the cooperating witness or
"CW-1") told law enforcement officers that he could identify his
supplier of fentanyl used in the Yonkers controlled purchase and
could arrange for another deal with that supplier.[1]  During these

_____

[1]    CW-1 has agreed to cooperate with law enforcement officers
in exchange for leniency in connection with CW-1's pending

conversations, I have learned that CW-1 supplied law enforcement officers with a phone number that he used to contact his supplier, who he identified as "Youngi" (later identified by law enforcement officers as HECTOR HERNANDEZ-ESCOLASTICO, the defendant).

7.     Based on my participation in the investigation, as well as my conversations with CW-1, I have learned that, on or about September 18, 2019, at the direction of and in the presence of law enforcement, CW-1 contacted HECTOR HERNANDEZ-ESCOLASTICO, the defendant, by telephone using the number CW-1 provided to law enforcement.  The call was recorded by law enforcement officers.  During the call, CW-1 told HERNANDEZ-ESCOLASTICO that CW-1 was ready to pick up an additional 400 grams of fentanyl for a planned sale to CW-1's contacts in Yonkers.

8.     Based on my participation in the investigation, as well as my conversations with CW-1, I have learned that following the call, at the direction of law enforcement, CW-1 arranged to meet HECTOR HERNANDEZ-ESCOLASTICO, the defendant, later that day (September 18, 2019) at HERNANDEZ-ESCOLASTICO's apartment in the vicinity of Valentine Avenue in the Bronx.  The location of HERNANDEZ-ESCOLASTICO's apartment was provided to law enforcement officers by CW-1 based on CW-1's past dealings with HERNANDEZ-ESCOLASTICO.

9.     Before the meeting, law enforcement officers searched CW-1 for money and contraband with negative results, and outfitted CW-1 with a monitoring device.[2]  The meeting was surveilled by law enforcement officers waiting outside of HERNANDEZ-ESCOLASTICO's apartment building.  Based on law enforcement observations during surveillance, as well as a debriefing with CW-1, I have learned that at the meeting, at approximately 12:35pm, HERNENDEZ-ESCOLASTICO, the defendant, provided CW-1 with two plastic-wrapped bricks containing

---

narcotics charges.  The information provided by CW-1 has proven to be reliable and has on several occasions been independently corroborated by law enforcement officers as part of their investigation.  CW-1 does not have a criminal history apart from the pending narcotics charges.

[2]     Based on my conversations with other law enforcement officers and my participation in the investigation, I have learned that the monitoring device unexpectedly failed to operate during this meeting due to a technical issue.

4

supposed fentanyl in addition to a smaller bag of supposed
heroin.  After the meeting, CW-1 then met with law enforcement
officers at an agreed-upon location, where officers recovered
from CW-1 the supposed fentanyl and heroin.  Subsequent testing
revealed that the two bricks of supposed fentanyl weighed
approximately 400 grams.[3]

        10.  Based on my participation in the investigation,
as well as my conversations with CW-1, I have learned that later
that afternoon in Yonkers, at approximately 3:44 p.m. on or
about September 18, 2019, at the direction of and in the
presence of law enforcement, CW-1 placed a second call to HECTOR
HERNANDEZ-ESCOLASTICO, the defendant, using the number CW-1
initially provided to law enforcement. During this phone
conversation, CW-1 told HERNANDEZ-ESCOLASTICO that CW-1 had
finished selling the fentanyl and heroin to his contacts in
Yonkers that HERNANDEZ-ESCOLASTICO provided to CW-1 earlier that
day.  CW-1 also informed HECTOR HERNANDEZ-ESCOLASTICO that CW-1
was driving to CW-1's apartment in Manhattan, where HERNANDEZ-
ESCOLASTICO could pick up the proceeds from the narcotics sales.

        11.  Based on my participation in the investigation,
and my conversations with other law enforcement officers, I have
learned that shortly after CW-1's phone call concluded, law
enforcement officers surveilling the apartment building of
HECTOR HERNANDEZ-ESCOLASTICO, the defendant, observed an
individual (later identified as HERNANDEZ-ESCOLASTICO) leave the
apartment building and enter a White Dodge Durango with Florida
license plates.[4]

        12.  Based on my participation in the investigation, I
know that after observing the White Dodge Durango drive for
several blocks, the surveilling officers activated their lights
and sirens and directed the vehicle to pull over.  After the
vehicle pulled over, the surveilling officers identified the

---

[3]    The substance was later field-tested with a handheld
spectrometer device, which indicated the presence of the
compound oxymorphone, which based on my training and experience
is sometimes used as a cutting agent.  Additionally, based on my
training and experience, the results of a handheld spectrometer
do not always register the presence of fentanyl.

[4]    Based on my review of documents and records in this
investigation, I have learned that the vehicle is registered to
HECTOR HERNANDEZ-ESCOLASTICO, the defendant.

5

driver as HECTOR HERNANDEZ-ESCOLASTICO, the defendant, who
agreed to speak with law enforcement.

13.   Based on my participation in the investigation,
and my conversations with other law enforcement officers, I have
learned that HECTOR HERNANDEZ-ESCOLASTICO, the defendant,
accompanied law enforcement officers to a nearby parking lot in
the vicinity of University Avenue in the Bronx.  At this point,
the officers read HERNANDEZ-ESCOLASTICO his *Miranda* rights.
HERNANDEZ-ESCOLASTICO subsequently waived his *Miranda* rights and
provided verbal and written consent for law enforcement officers
to search his vehicle, phones, and apartment.  During this
conversation, HERNANDEZ-ESCOLASTICO also informed law
enforcement officers, in part and in substance, that he keeps a
loaded gun in his apartment.

14.   I and other law enforcement officers then
accompanied HERNANDEZ-ESCOLASTICO, the defendant, to his
apartment.  HERNANDEZ-ESCOLASTICO, in the presence of law
enforcement, identified a room that he described as his bedroom.
Within the bedroom, I and other law enforcement officers
observed, among other things, a dresser, a nightstand, a bed,
and a crib for a small child.  In searching the bedroom in the
presence of HERNANDEZ-ESCOLASTICO, I and other law enforcement
officers found a loaded handgun, specifically a Glock Model 26 9
millimeter, in a brown box next to the bed.  Within the brown
box and alongside the handgun was a fully loaded magazine
cartridge and a separate 31-round magazine.  Next to the
nightstand was a black computer/laptop case that, upon
inspection, contained a large brick of a white powdery substance
wrapped in duct tape.  Based on my training and experience, as
well as the similarity of the substance to that obtained by CW-1
from the defendant earlier in the day, I believe this brick to
contain fentanyl. Law enforcement officers later weighed the
brick, which including the packaging, weighted 1,415 grams.

15.   In addition to the handgun and supposed fentanyl
described above, I and other law enforcement officers were also
able to identify within the bedroom and apartment of HERNANDEZ-
ESCOLASTICO, the defendant, a number of additional items that,
based on my training and experience, are used and associated
with the distribution of narcotics.  Those items include, among
other things, a money counter, grinders, and hundreds of
glassine bags.  I and other law enforcement officers also
observed numerous "decks" of glassine bags in a box on top of
the bedroom dresser containing a brown powder substance that,

6

based on my training and experience, is consistent with the description of heroin.

16.  Based on my participation in the investigation, I have learned that during the consent search of the apartment, the defendant stated to law enforcement officers, in part and in substance, that he believed he had approximately 1,500 grams of fentanyl in the apartment, a significant portion of which he had obtained through a recent trip to east Boston.  HERNANDEZ-ESCOLASTICO also stated to law enforcement, in part and in substance, that the quantities of drugs that he provided to CW-1 earlier in the day, and the drugs seized from the computer/laptop bag and elsewhere in the apartment, were fentanyl.

17.  Based on my participation in the investigation, my review of reports and records, and my conversations with other law enforcement officers, DEA agents seized approximately 1,715 grams of supposed fentanyl, including the packaging, from the bedroom of HECTOR HERNANDEZ-ESCOLASTICO, the defendant. That quantity of fentanyl is in addition to the approximately 400 grams of supposed fentanyl HERNANDEZ-ESCOLASTICO provided to CW-1 on or about September 18, 2019 for the purposes of distribution and sale on consignment in Yonkers.

WHEREFORE, deponent respectfully requests HECTOR HERNANDEZ-ESCOLASTICO, the defendant, be imprisoned or bailed, as the case may be.

JACQUELINE ESTEVEZ
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
19th day of September, 2019

THE HONORABLE JUDITH C. McCARTHY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK